**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

___

LOUIS BLOOM and NANCY BLOOM,

                                          Plaintiffs,

-vs-

PROMAXIMA MANUFACTURING COMPANY,
M-F ATHLETIC COMPANY, INC., PROMAXIMA
MANUFACTURING, LTD.,

                                          Defendants.

___

EXCELLUS HEALTH PLAN, INC.,

                                          Intervenor.

___

PROMAXIMA MANUFACTURING, LTD.,

                                          Cross-Claimant

-vs-                                            DECISION and ORDER

M-F ATHLETIC COMPANY, INC.,                                  05-CV-6735-CJS

                                          Cross-Defendant.

___

PROMAXIMA MANUFACTURING, LTD.,

                                          Third-Party Plaintiff,

-vs-

THE LODGE AT WOODCLIFF,

                                          Third-Party Defendant.

___

M-F ATHLETIC COMPANY, INC.,

        Cross-Claimant,

   -vs-

PROMAXIMA MANUFACTURING, LTD.,

        Cross-Defendant.

M-F ATHLETIC COMPANY, INC.,

        Cross-Claimant,

   -vs-

THE LODGE AT WOODCLIFF, ProMaxima MANUFACTURING, LTR.,

        Cross-Defendants.

THE LODGE AT WOODCLIFF,

        Cross-Claimant,

   -vs-

M-F ATHLETIC COMPANY, INC.,

        Cross-Defendant.

M-F ATHLETIC COMPANY, INC.,

                Third-Party Plaintiff,

        -vs-

WOODCLIFF ASSOCIATES LLC, d/b/a THE LODGE AT WOODCLIFF,

                Third-Party Defendant.

---

WOODCLIFF ASSOCIATES LLC, d/b/a THE LODGE AT WOODCLIFF,

                Cross-Claimant,

        -vs-

PROMAXIMA MANUFACTURING, LTD.,

                Cross-Defendant.

---

PROMAXIMA MANUFACTURING, LTD.,

                Third-Party Plaintiff,

        -vs-

WOODCLIFF ASSOCIATES LLC, d/b/a THE LODGE AT WOODCLIFF,

                Third-Party Defendant.

PROMAXIMA MANUFACTURING, LTD.,

       Cross-Claimant,

     -vs-

M-F ATHLETIC COMPANY, INC.,

       Cross-Defendant.

---

M-F ATHLETIC COMPANY, INC.,

       Cross-Claimant,

     -vs-

THE LODGE AT WOODCLIFF, ProMaxima MANUFACTURING COMPANY,

       Cross-Defendants.

---

| | |
|---|---|
| For Plaintiffs: | Angelo G. Faraci, Esq. |
| | Matthew F. Belanger, Esq. |
| | Faraci Lange LLP |
| | 28 East Main Street Suite 1100 |
| | Rochester, NY 14614 |
| | (585) 325-5150 |
| For Defendants ProMaxima Manufacturing Company, ProMaxima Manufacturing, Ltd. | Charles D. Cole , Jr., Esq. |
| | Lon VanDusen Hughes, Esq. |
| | Newman Fitch Altheim Myers, P.C. |
| | 14 Wall Street 22nd Floor |
| | New York, NY 10005 |
| | (212) 619-4350 |

| For Defendant M-F Athletic Company, Inc. | Robert M. Shaddock, Esq.<br>Hiscock & Barclay LLP<br>2000 HSBC Plaza<br>100 Chestnut Street<br>Rochester, NY 14604<br>(585) 295-4454 |
|---|---|
| For Intervenor Excellus Health Plan, Inc. | Edward P. Hourihan , Jr., Esq.<br>Bond Schoeneck & King PLLC (Roch)<br>345 Woodcliff Drive Suite 208<br>Fairport, NY 14450-4210<br>(585) 362-4712 |
| For Third-Party Defendant The Lodge at Woodcliff | Amy L. DiFranco, Esq.<br>Glenn E. Pezzulo, Esq.<br>Culley, Marks, Tanenbaum & Pezzulo<br>36 Main Street West<br>Suite 500 Executive Office Building<br>Rochester, NY 14614-1790<br>(585) 546-7830 |

## INTRODUCTION

**Siragusa, J.** This diversity personal injury case is before the Court for consideration of four motions: Docket No. 63, motion filed by Woodcliff Associates LLC, d/b/a The Lodge at Woodcliff ("Woodcliff") for summary judgment; Docket No. 64, motion filed by M-F Athletic Company, Inc. ("M-F Athletic") for partial summary judgment on its indemnification claim and for preclusion of testimony of Plaintiffs' expert, Charles H. Pittman ("Pittman"); Docket No. 69, motion filed by ProMaxima Manufacturing, Ltd. ("ProMaxima") to preclude testimony by Plaintiffs' expert, Pittman; and Docket No. 79, cross-motion filed by Plaintiffs to preclude testimony by defense expert Francis Cosgrove ("Cosgrove"), and one opinion of defense expert Jeffrey Schwalje ("Schwalje"). For the reasons stated below, Woodcliff's motion (Docket No. 63) for summary judgment is granted; M-F Athletic's motion (Docket No. 64) for partial summary judgment on its indemnification claim and for preclusion of

expert testimony is denied. ProMaxima's motion (Docket No. 69) to preclude testimony by Plaintiff's expert, Pittman, is denied. Plaintiff's motion (Docket No. 79) to preclude expert testimony is granted.

## FACTUAL BACKGROUND

On May 16, 2004, at approximately 7:30 a.m., Plaintiff Louis Bloom, was working out at the fitness center located at The Lodge at Woodcliff. He was using a Roman chair manufactured by ProMaxima and sold to Woodcliff by M-F Athletic in August 2000. The Roman chair was a piece of equipment Plaintiff had previously used without incident. However, on this occasion, when Plaintiff put his legs under the foot rest T bar on the Roman chair, the T bar came out, and Plaintiff fell head first to the floor sustaining injuries.

Plaintiff had been a member of the health club at Woodcliff since January 1995 and maintained that membership through the date of the incident at issue in this lawsuit. (Bloom Dep. at 14.) At the beginning of his membership, Plaintiff was given an orientation to the equipment by a certified personal trainer. (*Id*. at 15.) Customarily, Plaintiff's three to four day per week workout routine took him from the Gravitron, stair stepper, or treadmill, and then the Roman chair. (*Id*. at 17.) Plaintiff recalls that the Roman chair was not initially in Woodcliff's health club when he first joined, but it had been there two or three years by May 2004 and that he "walked in one day and a friend of [his] was working on it … and [Plaintiff} started working on it from that day forward." (*Id*. at 18.) It was that friend, Joe Testa, who showed Plaintiff how the Roman chair worked. (*Id*. at 19.)

ProMaxima had assembled, wrapped, and shipped the chair directly to Woodcliff by truck. ProMaxima did not provide any instruction manual, user guide, or written information on the use of the Roman chair. ProMaxima designed the Roman chair in 1981 or 1982, and

as designed, it has a foot rest bar that is capable of being raised or lowered into a sleeve to fit the user's personal preference. A pin is slid into one of the holes on the sleeve and one of the holes on the bar to lock the bar in position. However, the design of the chair precludes the user from actually seeing the hole in the restraint bar, and thus, the user must rely on the audible "click" of the spring-loaded pin to know it has gone into a hole. Unfortunately, it is possible to put the restraining pin into a hole in the sleeve that is *below* the bottom of the last hole in the restraint bar and still hear the "click" as the spring pushes into place. In such position, though, the pin does not engage the restraint bar. Woodcliff contends that this is what Plaintiff must have done.

From the time of its receipt, Woodcliff had no complaints from users of the Roman chair and no modifications or repairs had been made to it. Once per year, Woodcliff had all the equipment in its fitness center, including the Roman chair, inspected by an independent company owned by Pittman. During his annual inspections, Pittman never found that the pin was in need of repair.

## STANDARDS OF LAW

*Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing

that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d

Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## ANALYSIS

### *Woodcliff's Motion for Summary Judgment*

Woodcliff is moving for summary judgment, seeking dismissal of the claims brought by ProMaxima and M-F Athletic. Woodcliff maintains that, as a matter of law, it was not negligent with respect to its ownership, care or maintenance of the Roman chair or with respect to its operation of the health club, and consequently is entitled to summary judgment.

Both ProMaxima and M-F Athletic, in opposing Woodcliff's application, rely on the American College of Sports Medicine Health/Fitness Facility Standards and Guidelines ("Guidelines"). ProMaxima points to those standards as "some evidence of negligence" and alleges that Woodcliff violated a number of the standards set out in the Guidelines. (ProMaxima Mem. of Law at 3.) With respect to these Guidelines, ProMaxima contends that Woodcliff was negligent because: Woodcliff failed to instruct and supervise Plaintiff in the use of the Roman chair; Woodcliff had no one on the fitness floor at the time of

Plaintiff's accident; and Woodcliff had no fitness professional at the facility.

M-F Athletic references the Guidelines with respect to the deposition testimony of expert witness Stephen J. Tharrett ("Tharrett"). Tharrett is one of the editors of the Guidelines, for both its Second (1997) and Third (2007) editions. At deposition, Tharrett testified that Woodcliff failed to provide proper signage or supervision for Plaintiff's activities in the fitness center on the day of his injury. In that regard, Tharrett stated that proper instruction on use of the machine would have required showing Plaintiff that he should push down and pull up on the footrest T bar before taking his position on the Roman chair. (Tharrett Dep.at 30, 43 & 52.)

Regarding the Guidelines, ProMaxima cites, *inter alia*, to *Love v. N.Y. Housing Auth.*, 251 A.D.2d 553, 554 (N.Y. App. Div. 2d Dept. 1998) (citation omitted) for the proposition that the failure to follow the Guidelines shows some evidence of negligence. However, *Love* is distinguishable. There, the Appellate Division observed that "the defendant does not dispute that a violation of ASME/ANSI A17.1a-1994, constitutes some evidence of negligence…." *Id*. However, such is not the case here, since Woodcliff clearly contests the contention that the Guidelines create a standard of care.

M-F Athletic, like ProMaxima, relies, *inter alia* on the *Love* case, and also on *Johnson v. Bon-Ton Dep't Stores, Inc.*, No. 06-5279-cv, 278 Fed. Appx. 56, 58 (2d Cir. May 21, 2008). The Court has already distinguished *Love*, and as for *Johnson*, the Second Circuit's decision was by way of a summary order, and, per the Second Circuit's Rules, "[r]ulings by summary order do not have precedential effect." Local Rule of the Second Circuit 32.1(b) (2008). Even if the case had precedential effect, the Second Circuit summary order makes clear that, as in *Love*, "counsel for Bon-Ton conceded that 'the fact

that [there] was a passenger on an exclusively freight elevator is evidence of negligence.'"

*Johnson*, 278 Fed. Appx. at 58.

Under New York law:

> In premises liability cases alleging an injury caused by a defective condition, the plaintiff must show that the landowner either created the defective condition, or had actual or constructive notice of the defective condition for such a period of time that, in the exercise of reasonable care, it should have corrected it ( see, *Hollinger v. Chestnut Ridge Racquet Corp.*, 227 A.D.2d 380, 642 N.Y.S.2d 76).

*Abrams v. Powerhouse Gym Merrick, Inc.,* 284 A.D.2d 487, 487-488, 727 N.Y.S.2d 135, 136 (N.Y.A.D. 2 Dept.,2001). Moreover, under most circumstances, the opinion of a qualified expert that a plaintiff's injuries were caused by a deviation from **relevant industry standards** would preclude a grant of summary judgment in favor of the defendants (*see*, *e.g.*, *Trimarco v. Klein,* 56 N.Y.2d 98)." *Murphy v. Conner*, 199 A.D.2d 929 (N.Y. App. Div. 3rd Dept.1993) (emphasis added).

The evidentiary proof before the Court on this motion shows that Woodcliff neither "created the defective condition, or had actual or constructive notice of the defective condition for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Abrams v. Powerhouse Gym Merrick, Inc.*, 284 A.D.2d at 487-488. Furthermore, the Court finds that ProMaxima's and M-F Athletic's reliance on the Guidelines to create an issue of material fact is misplaced. The Court finds as a matter of law that the Guidelines are not "relevant industry standards, since, as Woodcliff points out, the Guidelines specifically state:

> These standards are not intended to give rise to duty of care or to establish a standard of care; rather, they are performance criteria derived from a consensus of ACSM leaders…. Such guidelines are not standards, nor are they applicable in every situation or circumstance; rather, they are illustrative

tools that ACSM believes should be considered by health and fitness experts. (DiFranco Aff. Ex. I at xi.)

It is undisputed that Woodcliff exercised reasonable care to have the Roman chair inspected annually and that Plaintiff had successfully used that piece of equipment many times in the past without incident. No proof has been submitted raising a material issue of fact as to whether Woodcliff was negligent and whether any alleged negligence on its part was the proximate cause of Plaintiff's unfortunate accident.[1] In short, neither Plaintiff, ProMaxima, or M-F Athletic has shown that Woodcliff breached a duty of care owed to Plaintiff under New York law and that the breach was a proximate cause of Plaintiff's injuries. Consequently, Woodcliff is entitled to summary judgment.

### *M-F Athletic's Motions for Exclusion of Expert Testimony by Charles H. Pittman and Partial Summary Judgment Against ProMaxima for Indemnification*

M-F Athletic moves (Docket No. 69) pursuant to Federal Rule of Evidence 702 to preclude Plaintiffs from presenting testimony by their expert witness, Charles H. Pittman ("Pittman"), and also seeks partial summary judgment on its cross-claim for indemnification against ProMaxima.

Relying on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), M-F Athletic contends that Pittman's "unsupported opinion is conclusory, speculative, conjectural and lacks any factual foundation." (M-F Athletic Mem. of Law at 3.) M-F Athletic argues that Pittman's inspection of the Roman chair, prior to the incident was only for purposes of routine maintenance and, then following the accident, to determine the chair's

---

[1] As the New York Court of Common Pleas observed, "the accident in question does not, of itself, authorize a presumption of negligence." *Millie v. Manhattan Ry. Co.*, 5 Misc. 301, 25 N.Y.S. 753, 756 (N.Y. Ct. Comm. Pleas 1893).

manufacturer, and "never for the purposes of determining whether a component was defective or not." (*Id.*)

The Court's primary concern in its gatekeeper function under *Daubert* is to make sure that any expert evidence offered "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Evidently, it was Pittman who discovered, through examination of the Roman chair, that

> there was a ninth position at the end of the post where the pop pin engaged just like it was in a hole when, in fact, the footrest was actually sitting on the pin. [Exhibit "E", pgs 30-32, 66]. In this position, there was no way to visually tell that the pop pin was not in a hole and the footrest appeared to be in a "reasonable, ready position for the user to begin using the piece of equipment." [Exhibit "E", pg. 66]. Pittman was surprised that this Roman chair did not have a mechanical stop to prevent the footrest piece from separating from the rest of the chair because many other similar pieces of exercise equipment manufactured by others had such a mechanism. [Exhibit "E", pg. 31-34, 36-41, 59-60, 69-71]. After his examination, Gail McGrory asked Pittman whether it was safe for her to put the Roman chair back in service and he advised her not to. [Exhibit "E", pgs. 33, 73-74; Exhibit "G", pgs 30-32]. Pittman explained that his recommendation was based on his conclusion that a similar accident could happen again because it was possible for the pop pin to appear to be engaged in a hole when it was really below the footrest bar, which had no mechanical stop to prevent the bar from separating from the base. [Exhibit "E", pgs 73-74; Exhibit "G", pgs. 30-32].

(Faraci Aff. in Opp'n. (Docket No. 80) ¶ 9.) In *Lauria v. National Railroad Passenger Corporation*, 145 F.3d 593 (3d Cir. 1998), the Third Circuit wrote:

> "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996); *see also Paoli I*, 916 F.2d at 855 (writing that any "insistence on a certain kind of degree or background is inconsistent with our jurisprudence"). We have held that witnesses such as Slavin can qualify as experts under Rule 702 on the basis of practical experience alone, and a formal degree, title, or educational speciality is not required. *American Tech. Resources v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

*Lauria*, 145 F.3d at 599. In light of Pittman's claims of experience with athletic equipment and his examination of the Roman chair at issue, the Court concludes it would be error to exclude his testimony simply because he may not be the best qualified or possess the most appropriate specialization.

Turning to M-F Athletic's motion for partial summary judgment against ProMaxima for indemnification, M-F Athletic argues that,

> [i]t is undisputed that Pro-Maxima designed and manufactured the [R]oman chair involved in Bloom's alleged accident. *See* Statement of Undisputed Facts ¶¶ 4, 10. It is further undisputed that M-F Athletic's only responsibility involving the [R]oman chair was its processing of the phone order. Id. at ¶ 3. M-F Athletic was never in possession of the [R]oman chair nor did it make any alterations or modifications of the [R]oman chair. Id. at ¶ ¶ 5, 9. Thus, there is no evidence that M-F Athletic was culpable in anyway for the allegedly defective [R]oman chair. Accordingly, M-F Athletic is entitled to indemnification from Pro-Maxima and should be granted partial summary judgment.

(M-F Athletic Mem. of Law at 7.) The Court noted at oral argument that since Plaintiff had a negligence claim against M-F Athletic, which M-F Athletic has not moved to dismiss, and the jury could apportion liability among the defendants, the Court would deny the motion without prejudice to renewal if circumstances should warrant.

***ProMaxima Motion to Preclude Expert Testimony of Charles H. Pittman***

Like M-F Athletic, ProMaxima seeks to preclude Plaintiffs from offering Pittman's opinion at trial with regard to "giving expert testimony on the subject of exercise-equipment design generally, and specifically on the design of the [R]oman chair allegedly involved in Mr. Bloom's accident." (ProMaxima Mem. of Law at 2.) ProMaxima contends in their supporting memorandum of law that,

> Mr. Pittman is "in the business of maintaining, servicing and repairing exercise equipment . . . ." (Exhibit A, ¶ 3, p. 1). While it is clear that Mr. Pittman's

experience would qualify him as an expert with regard to the repair and maintenance of exercise equipment, it is equally clear that he has no educational or professional background that would qualify him to give expert testimony on the subject of exercise-equipment design. (Exhibit A).

(ProMaxima Mem. of Law at 2.) Exhibit A is Pittman's expert witness disclosure. ProMaxima's argument is essentially the same as M-F Athletic's, and, accordingly, the Court denies its motion to preclude as well.

### *Plaintiffs' Motion to Preclude Testimony by Defense Experts by Francis A. Cosgrove and Jeffrey Schwalje*

Plaintiffs move (Docket No. 79) to preclude expert testimony by Francis A. Cosgrove ("Cosgrove"), an expert retained by ProMaxima, and Jeffrey Schwalje ("Schwalje"), an expert retained by M-F Athletic. With regard to Cosgrove, Plaintiff argues that he is not qualified to give an opinion on product defect through knowledge, skill, or experience. At his pretrial deposition, Cosgrove candidly conceded that he was not competent to testify on the issue of design and that he had no engineering expertise. Nevertheless, Cosgrove maintained that, in his opinion, the Roman chair was not defective. (Cosgrove Dep. at 70-72.) The Court agrees that in its gatekeeper function, it should not permit Cosgrove to testify with regard to whether the Roman chair at issue here was defective. ProMaxima also proposes to have Cosgrove testify about whether Plaintiff's "use of the Roman [c]hair was proper." (ProMaxima Mem. of Law (Docket No. 94) at 3.) In this regard, the Court determines that Cosgrove seeks to provide the jury with "expert" testimony on the legal conclusion they should reach from the facts in the case. Such testimony is precluded under Federal Rule of Evidence 702. *See Andrews v. Metro-North Commuter R.R.*, 882 F.2d 705, 708 (2d Cir. 1989) ("Andrews testified that the station was dirty, filthy and kind of icy, that the platform had trash and ice on it and that the lighting was very dim. The jury needed no

special training or expertise to decide whether the platform thus was a "safe place"; yet, over the objection of defense counsel, [the defense expert] was permitted to testify that it was not.").

Turning to Schwalje, Plaintiffs contend that his "proposed testimony that the defect in the footrest platform is open and obvious is also improper under Rule 702 and should be excluded." (Pl.'s Mem. of Law (Docket No. 81) at 4.) M-F Athletic concedes in its memorandum of law (Docket No. 92 at 6) that under Florida law, "'some conditions are simply so open and obvious, so common and so ordinary innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition.'" (Docket No. 92 at 6, quoting *Abramson v. Walt Disney World Co.*, 370 F. Supp. 2d 1221, 1225 (M.D. Fla. 2005.) However, M-F Athletic contends that the situation here is different from the slip and fall one in *Abramson*, arguing that, "this is case involving a highly specialized piece of exercise equipment. The [R]oman chair and its components are not 'so common and so ordinary [sic] innocuous' to constitute lay matters which a jury is capable of understanding and deciding without Mr. Schwalje's help." (*Id*. at 6–7.) The Court disagrees. The issue relating to the pin designed to lock the T bar in place is not complex and not beyond the understanding of the ordinary juror based simply on a description of the Roman chair's design. The Court finds that whether the locking pin could be inserted and sound as if it is locking the T bar in place, but, nonetheless have been inserted below the T bar, thereby failing completely to lock it in place, is plainly a jury question that a reasonable juror can determine without the aid of expert testimony.

## CONCLUSION

Woodcliff's motion (Docket No. 63) for summary judgment is granted and the Clerk

is directed to enter judgment for Woodcliff and terminate Woodcliff as a party. M-F Athletic's motion (Docket No. 64) for partial summary judgment on its indemnification claim against ProMaxima and preclusion of expert testimony is denied. ProMaxima's motion (Docket No. 69) to preclude testimony by Plaintiff's expert, Pittman, is denied. Plaintiff's cross-motion (Docket No. 79) to preclude testimony by ProMaxima's expert, Cosgrove, and to preclude a portion of the testimony by M-F Athletic's expert, Schwalje, that any danger in the Roman chair was open and obvious, is granted.

    IT IS SO ORDERED.

Dated:  November 9, 2009
         Rochester, New York

                ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge